|                                  |   |                      |
|----------------------------------|---|----------------------|
| Evergreen Power, LLC and         | : | Docket 3:12-cv-00032 |
| Asnat Realty, LLC                | : |                      |
|                                  | : |                      |
| Plaintiffs                       | : |                      |
|                                  | : |                      |
| v.                               | : |                      |
|                                  | : |                      |
| United Illuminating Company      | : |                      |
|                                  | : |                      |
| Defendant                        | : | January 5, 2012      |

## EXHIBITS TO PLAINTIFFS' COMPLAINT

The following exhibits, Exhibits A, B, and C to Plaintiffs' January 5, 2012 Complaint, were not included with the Complaint as electronically filed on January 5, 2012. These exhibits were included with the hard copy of the Complaint provided to the Defendant as an attachment to the Notice of Lawsuit and Request to Waive Service of a Summons.

Respectfully Submitted,
Plaintiffs

**/s/Alan M. Kosloff**

_____

By:    Alan M. Kosloff
       Federal Bar #ct05554
       Law Offices of Alan M. Kosloff
       Their Attorneys
       28 North Main Street
       West Hartford, CT
       Tel: 860-521-7004
       Fax: 860-521-3352
       akosloff@kosloff.net

## WARRANTY DEED

**QUINNIPIAC ENERGY LLC**, a Connecticut limited liability company having a mailing address of 800 Village Walk, Suite 282, Guilford, Connecticut 06437 ("Grantor"), for One Dollar ($1) and other good and valuable consideration paid, grants to **EVERGREEN POWER LLC**, a Delaware limited liability company having a mailing address of 135 Fulton Street, Lawrence, NY 11559 (the "Grantee"), with *WARRANTY COVENANTS*, that certain piece or parcel of land situated in the City of New Haven, County of New Haven and State of Connecticut, described on <u>Schedule A</u> attached hereto and made a part hereof. Said premises are subject to those encumbrances set forth on <u>Schedule B</u> attached hereto and made a part hereof.

Being the same premises conveyed to the Grantor herein by Quit Claim Deed from The United Illuminating Company dated August 16, 2000 and recorded in Volume 5716 at Page 72 of the New Haven Land Records.

IN WITNESS WHEREOF, the undersigned has executed this Warranty Deed this 9th day of December, 2006.

Signed Sealed and delivered
in the presence of:

_No Tax_

_Rory J Creaser_

QUINNIPIAC ENERGY LLC

By: _____
Ralph DeGeeter
Its Managing Member

STATE OF FLORIDA      )
                                       ) ss. Bradenton
COUNTY OF MANATEE )

RORY J. CREASER
Notary Public, State of Florida
Commission DD558915
My comm. expires June 4, 2010

On this the 9 day of December, 2006, before me, the undersigned officer, personally appeared Ralph DeGeeter who acknowledged himself to be the Managing Member of **Quinnipiac Energy, LLC**, a limited liability company, and that he, as such Managing Member, being authorized so to do, executed the foregoing instrument for the purposes therein contained, by signing the name of the limited liability company by himself as such Managing Member.

In witness whereof, I hereunto set my hand.

Name: _Rory J Creaser_
Notary Public
My Commission Expires on 6/4/10

20180.000/426925.1

DEED DESCRIPTION for Parcel A, 510 Grand Avenue.

All that certain piece or parcel of land, together with all buildings and improvements thereon, situated in the City of New Haven, County of New Haven, State of Connecticut as shown on map entitled "Property Survey, Proposed Lot Split, Property of Quinnipiac Energy, LLC", New Haven, Connecticut, Scale: 1"=40', dated September 29, 2003, and revised to Dec. 11, 2006 by Godfrey-Hoffman Associates, LLC, bounded and described as follows:

Beginning at the northeasterly corner of herein described parcel,
Thence: South 12 degrees 30 minutes 46 seconds West, through land now or formerly of Quinnipiac Energy, LLC, a distance of 151.56 feet;
Thence: South 06 degrees 24 minutes 45 seconds East, through land now or formerly of Quinnipiac Energy, LLC, a distance of 258.78 feet;
Thence: South 41 degrees 39 minutes 54 seconds West, through land now or formerly of Quinnipiac Energy, LLC, a distance of 26.72 feet;
Thence: South 89 degrees 44 minutes 34 seconds West, through land now or formerly of Quinnipiac Energy, LLC, a distance of 286.20 feet;
Thence: North 03 degrees 30 minutes 13 seconds West, along the West Branch of the Mill River, a distance of 356.14 feet;
Thence: North 11 degrees 30 minutes 43 seconds East, along the West Branch of the Mill River, a distance of 25.00 feet;
Thence: North 73 degrees 17 minutes 14 seconds West, along the West Branch of the Mill River, a distance of 68.94 feet;
Thence: North 13 degrees 24 minutes 40 seconds East, along the West Branch of the Mill River, a distance of 112.42 feet;
Thence: South 75 degrees 52 minutes 47 seconds East, along the Southerly Street Line of Grand Avenue, a distance of 65.00 feet;
Thence: South 77 degrees 29 minutes 13 seconds East, along the Southerly Street Line of Grand Avenue, a distance of 308.90 feet to the point and place of beginning.

Said parcel contains 146,711 Square Feet or 3.37 Acres.

DEED DESCRIPTION for Right Of Way In Favor Of Parcel "A" Over Land Of Parcel "B", 510 Grand Avenue.

All that certain piece or parcel of land, situated in the City of New Haven, County of New Haven, State of Connecticut as shown on map entitled "Property Survey, Proposed Lot Split, Property of Quinnipiac Energy, LLC", New Haven, Connecticut, Scale: 1"=40', dated September 29, 2003, and revised to Dec. 11, 2006 by Godfrey-Hoffman Associates, LLC, bounded and described as follows:

Beginning at the northeasterly corner of herein described parcel,
Thence: South 12 degrees 30 minutes 46 seconds West, along the East Branch of the Mill River a distance of 146.22 feet;

20180.000/427194.1

Thence: South 06 degrees 24 minutes 45 seconds East, along the East Branch of the Mill River , a distance of 276.90 feet;

Thence: South 89 degrees 44 minutes 34 seconds West, through land now or formerly of, Quinnipiac Energy, LLC, a distance of 52.19 feet;

Thence: North 41 degrees 39 minutes 54 seconds East, through land now or formerly of Quinnipiac Energy, LLC , a distance of 26.72 feet;

Thence: North 06 degrees 24 minutes 45 seconds West, through land now or formerly of Quinnipiac Energy, LLC a distance of 258.78 feet;

Thence: North 12 degrees 30 minutes 46 seconds West, through land now or formerly of Quinnipiac Energy, LLC , a distance of 151.56 feet;

Thence: South 77 degrees 29 minutes 13 seconds East, along the Southerly Street Line of Grand Avenue, a distance of 32.00 feet to the point and place of beginning.

20180.000/427194.1

## Schedule B

### Encumbrances

1.    Taxes on the list of December 1, 2005, first half paid, second half not yet due, and taxes on the list of December 1, 2006, assessed but not yet due and payable, which taxes the Grantee herein assumes and agrees to pay as part consideration for this deed.

2.    Any and all provisions of any ordinance, municipal regulation or public or private law, including building and building line restrictions and zoning regulations.

3.    Sewer use liens in favor of the Greater New Haven WPCA as follows: in the amount of $46.96 dated December 31, 2003; in the amount of $46.96 dated June 30, 2004; in the amount of $46.96 dated December 31, 2004; in the amount of $46.96 dated June 30, 2005; in the amount of $81.06 dated December 31, 2005; and in the amount of $81.20 dated June 30, 2006; as recorded in the Sewer Lien Volumes of the New Haven Land Records.

4.    Water use lien in the amount of $9,295.59 in favor of South Central Regional Water Authority dated May 24, 2004 and recorded in Volume 6859 at page 217 of the New Haven Land Records.

5.    Terms and conditions of easements and other rights reserved by The United Illuminating Company in the Quit Claim Deed from The United Illuminating Company to Quinnipiac Energy, LLC dated August 16, 2000 and recorded in Volume 5716 at Page 72 of the New Haven Land Records.

6.    Certificate of Attachment in the amount of $35,250.00 in favor of the Southern Connecticut Gas Co. dated May 11, 2005 and recorded in Volume 7182 at Page 116, which has been reduced to a Judgment Lien in the amount of $28,160.35 in favor of the Southern Connecticut Gas Co. dated July 18, 2005 and recorded in Volume 7277 at Page 248 of the New Haven Land Records.

CITY CLERK
CITY OF NEW HAVEN

06 DEC 13 PM 1:51

@824304

20180.000/426925.1

## WARRANTY DEED

**QUINNIPIAC ENERGY LLC**, a Connecticut limited liability company having a mailing address of 800 Village Walk, Suite 282, Guilford, Connecticut 06437 ("Grantor"), for One Dollar ($1) and other good and valuable consideration paid, grants to **ASNAT REALTY LLC**, a Delaware limited liability company having a mailing address care of Steven B. Rothschild, Esq., 747 Chestnut Ridge Road, Suite 200, Spring Valley, New York 10977 (the "**Grantee**"), with *WARRANTY COVENANTS*, that certain piece or parcel of land situated in the City of New Haven, County of New Haven and State of Connecticut, described on **Schedule A** attached hereto and made a part hereof. Said premises are subject to those encumbrances set forth on **Schedule B** attached hereto and made a part hereof.

Being the a portion of same premises conveyed to the Grantor herein by Quit Claim Deed from The United Illuminating Company dated August 16, 2000 and recorded in Volume 5716 at Page 72 of the New Haven Land Records.

IN WITNESS WHEREOF, the undersigned has executed this Warranty Deed this 13th day of December, 2006.

Signed Sealed and delivered
in the presence of:

_Angela Hepler_                           **QUINNIPIAC ENERGY LLC**

_JoAnn Hartman_                           By: _____
                                          Ralph De Geeter
                                          Its Managing Member

STATE OF FLORIDA          )
                          ) ss. Bradenton
COUNTY OF MANATEE         )

On this the 13th day of December, 2006, before me, the undersigned officer, personally appeared Ralph De Geeter who acknowledged himself to be the Managing Member of **Quinnipiac Energy, LLC**, a limited liability company, and that he, as such Managing Member, being authorized so to do, executed the foregoing instrument for the purposes therein contained, by signing the name of the limited liability company by himself as such Managing Member.

In witness whereof, I hereunto set my hand.

Angela L Hepler
My Commission DD224982
Expires June 22, 2007

Name: Angela Hepler
Notary Public
My Commission Expires on June 22, 2007

20180.000/427307.1

## Schedule A

## Legal Description

DEED DESCRIPTION for Parcel B, 510 Grand Avenue.

All that certain piece or parcel of land, together with all buildings and improvements thereon, situated in the City of New Haven, County of New Haven, State of Connecticut as shown on map entitled "Property Survey, Proposed Lot Split, Property of Quinnipiac Energy, LLC", New Haven, Connecticut, Scale: 1"=40', dated September 29, 2003, and revised to Dec. 11, 2007 by Godfrey-Hoffman Associates, LLC, bounded and described as follows:

Beginning at the northeasterly corner of herein described parcel,
Thence: South 12 degrees 30 minutes 46 seconds West, along the East Branch of the Mill River a distance of 146.22 feet;
Thence: South 06 degrees 24 minutes 45 seconds East, along the East Branch of the Mill River, a distance of 903.76 feet;
Thence: South 86 degrees 29 minutes 55 seconds West, along the Mill River, a distance of 238.47 feet;
Thence: North 55 degrees 53 minutes 50 seconds West, along the Mill River, a distance of 165.55 feet;
Thence: North 03 degrees 30 minutes 13 seconds West, along the West Branch of the Mill River, a distance of 544.18 feet;
Thence: North 89 degrees 44 minutes 34 seconds East, through land now or formerly of Quinnipiac Energy, LLC, a distance of 286.20 feet;
Thence: North 41 degrees 39 minutes 44 seconds East, through land now or formerly of Quinnipiac Energy, LLC, a distance of 26.72 feet;
Thence: North 06 degrees 24 minutes 45 seconds West, through land now or formerly of Quinnipiac Energy, LLC a distance of 258.78 feet;
Thence: North 12 degrees 30 minutes 46 seconds West, through land now or formerly of Quinnipiac Energy, LLC , a distance of 151.56 feet;
Thence: South 77 degrees 29 minutes 13 seconds East, along the Southerly Street Line of Grand Avenue, a distance of 32.00 feet to the point and place of beginning.

Said parcel contains 231,910 Square Feet or 5.32 Acres.

20120.000/427307.1

**Schedule B**

**Encumbrances**

1.    Taxes on the list of December 1, 2005, first half paid, second half not yet due, and taxes on the list of December 1, 2006, assessed but not yet due and payable, which taxes the Grantee herein assumes and agrees to pay as part consideration for this deed.

2.    Any and all provisions of any ordinance, municipal regulation or public or private law, including building and building line restrictions and zoning regulations.

3.    Sewer use liens in favor of the Greater New Haven WPCA as follows: in the amount of $46.96 dated December 31, 2003; in the amount of $46.96 dated June 30, 2004; in the amount of $46.96 dated December 31, 2004; in the amount of $46.96 dated June 30, 2005; in the amount of $81.06 dated December 31, 2005; and in the amount of $81.20 dated June 30, 2006; as recorded in the Sewer Lien Volumes of the New Haven Land Records.

4.    Water use lien in the amount of $9,295.59 in favor of South Central Regional Water Authority dated May 24, 2004 and recorded in Volume 6859 at page 217 of the New Haven Land Records.

5.    Terms and conditions of easements and other rights reserved by The United Illuminating Company in the Quit Claim Deed from The United Illuminating Company to Quinnipiac Energy, LLC dated August 16, 2000 and recorded in Volume 5716 at Page 72 of the New Haven Land Records.

6.    Certificate of Attachment in the amount of $35,250.00 in favor of the Southern Connecticut Gas Co. dated May 11, 2005 and recorded in Volume 7182 at Page 116, which has been reduced to a Judgment Lien in the amount of $28,160.35 in favor of the Southern Connecticut Gas Co. dated July 18, 2005 and recorded in Volume 7277 at Page 248 of the New Haven Land Records.

06 DEC 15 PH 1:33
CITY CLERK
CITY OF ...

20180.000/427307.1

## QUIT CLAIM DEED

TO ALL PEOPLE TO WHOM THESE PRESENTS SHALL COME, GREETING:

KNOW YE, That THE UNITED ILLUMINATING COMPANY, a corporation chartered by the General Assembly of the State of Connecticut and having its principal office in the City and County of New Haven in said State (hereinafter called the "Releasor"), for the consideration of One Dollar ($1.00), received to its full satisfaction of QUINNIPIAC ENERGY, LLC, a Delaware limited liability company having an office at 800 Village Walk, Suite 324, Guilford, Connecticut 06437 (hereinafter called the "Releasee"), does remise, release and forever quitclaim unto the Releasee, and unto its successors and assigns forever, all such rights, title, interest, claim and demand whatsoever as it, the said Releasor, has or ought to have in or to all that certain piece or parcel of land, together with all improvements thereon (excepting therefrom any and all electrical transmission and distribution facilities and equipment, which shall remain the property of Releasor), situated in the City of New Haven, County of New Haven and State of Connecticut, said piece or parcel of land being bounded and described on Schedule A attached hereto and made a part hereof (the "Premises"). By acceptance of this deed, Releasee agrees, for itself, its successors and assigns, to the terms and conditions of the easements and other rights reserved to Releasor, its successors and assigns, and to the covenants restricting the use of the Premises, all as described in the attached Schedule A.

TO HAVE AND TO HOLD the Premises, with all the appurtenances thereof, unto the said Releasee and its successors and assigns forever, so that neither the Releasor, nor its successors, nor any other person under it or them shall hereafter have any claim, right or title in or to the Premises or any part thereof, except as aforesaid and as described herein, but therefrom it is and they are by these presents forever barred and excluded.

IN WITNESS WHEREOF, on this 16th day of August, 2000, said The United Illuminating Company has caused this instrument to be signed, sealed and delivered by ___James F. Crowe___, its ___Vice President___, hereunto duly authorized and empowered.

Signed, sealed and delivered
in the presence of:

_Norman Fineberg_

_Karen C Osborn_
Karen C Osborn

THE UNITED ILLUMINATING COMPANY

By _James F. Crowe_
James F. Crowe
Its Vice President

No Tax

STATE OF CONNECTICUT )
                     : ss. New Haven              August 16 . 2000
COUNTY OF NEW HAVEN )

    Personally appeared _____ James F. Crowe
              Vice President _____ of The United Illuminating Company, a
Connecticut corporation, signer and sealer of the foregoing instrument, and acknowledged the
same to be his free act and deed as such officer, and the free act and deed of said corporation,
before me.

                                  Notary Public  Nathan Fineberg
                              Commissioner of the Superior Court

4_8_021.DOC\10705\495\218112.02

2

**ENGLISH STATION, NEW HAVEN, CONNECTICUT**

**SCHEDULE A TO QUIT CLAIM GRANT DEED**

All that certain piece or parcel of land, situated in the City of New Haven, County of New Haven and State of Connecticut, shown on a certain map entitled "English Station 510-520 Grand Avenue New Haven Conn." dated 9/14/98 revised 6/1/00, Scale 1" = 40' prepared by Gordon Bilides, P.E., Hamden, Connecticut (the "Map"), which Map is or will be filed in the New Haven Town Clerk's Office, being bounded and described as follows:

| | |
|---|---|
| NORTHERLY: | by Grand Avenue, 405.90 feet; |
| EASTERLY: | by Mill River (East Branch), 1049.97 feet; |
| SOUTHERLY: | by Mill River, 238.46 feet; |
| SOUTHWESTERLY: | by Mill River, 165.56 feet; |
| WESTERLY: | by Mill River (West Branch), 900.32 feet |
| SOUTHERLY AGAIN: | by Mill River (West Branch), 68.94 feet; |
| WESTERLY AGAIN: | by Mill River (West Branch), 112.42 feet. |

Together with all water rights, wharf rights and riparian and littoral rights and privileges connected therewith and appurtenant thereto as Releasor may have in and to New Haven Harbor, except as such rights may be reserved by Releasor herein, but subject to all State and Federal Harbor, Bulkhead and Pierhead lines as may have been or may be established.

Said premises are subject to taxes on the Grand List of October 1, 1999, which taxes Releasee hereby assumes and agrees to pay as partial consideration for this deed.

Reserving, however, unto the Releasor, its successors and assigns, the following rights, easements and privileges:

1.  A perpetual easement for ingress and egress on foot and in vehicles upon and over all existing roads, streets, drives, accessways, roadways and parking areas now existing on said piece or parcel of land, and upon and over any future roads, streets, drives, accessways, roadways and parking areas as may be constructed or established by Releasee, its successors or assigns, for the purpose of Releasor accessing those areas on said piece or parcel of land upon which Releasor is reserving rights and easements herein, as described below, and exercising the rights described therein.

2.  A perpetual easement upon, over and under those certain strips of land one hundred feet (100') in width, more or less, situated on said piece or parcel of land and labeled as "EASEMENT #1" on the Map (hereinafter, the "Transmission Easement Area"), to construct, install, inspect, remove, maintain, repair, replace and operate electrical transmission wires, lines, cables, towers and related facilities and equipment upon and over said Transmission Easement Area, together with such temporary construction and maintenance easements upon said piece or parcel of land as may be necessary to construct and maintain all of said facilities and equipment in accordance with good industry practices, and together with such water rights and riparian and littoral rights and

privileges as may be necessary therefor, connected therewith and/or appurtenant thereto, but reserving unto the Releasee, its successors and assigns, the right to maintain those portions of the existing "English Station" building lying within said Transmission Easement Area as shown on said Map.

3.     A perpetual easement to construct, install, inspect, remove, maintain, repair, replace and operate electrical distribution wires, lines, cables and related facilities and equipment upon and under a certain strip of land twenty feet (20') in width extending along the northerly property line of said piece or parcel of land and shown on the Map as "EASEMENT #3," together with such water rights and riparian and littoral rights and privileges as may be necessary therefor, connected therewith and/or appurtenant thereto.

4.     A temporary easement through and including December 31, 2001 to construct, install, inspect, remove, maintain, repair, replace and operate electrical distribution wires, poles, lines, cables, ducts and related facilities and equipment, including, without limitation, the existing capacitor banks and cable houses, upon, over and under, and protection cables over, those certain strips of land varying in width, situated on said piece or parcel of land and shown on the Map as "EASEMENT #2," together with such water rights and riparian and littoral rights as may be necessary therefor, connected therewith and/or appurtenant thereto. Upon expiration of this temporary easement (i) Releasor has the right, without penalty and in its sole discretion, to abandon in place any or all of the facilities and equipment within said easement, and upon any such abandonment, title to and ownership of all such abandoned facilities and equipment shall vest in the Releasee; (ii) Releasor has and shall have no obligation to remove the facilities and equipment within said easement or to restore the area of land covered by the temporary easement; and (iii) Releasee agrees, for itself, its successors and assigns, that it shall accept the area of land covered by the temporary easement and any such abandoned facilities and equipment therein in their as-is condition and that Releasor shall have no responsibility or liability for the same.

The strips and areas of land comprising the easement areas described in paragraphs numbered 2, 3 and 4 above are collectively called the "Easement Area" and said easements are collectively called the "Reserved Easements."

The facilities and equipment described in paragraphs numbered 2, 3 and 4 above are collectively called the "Facilities."

Together with the right to enter upon said Easement Area and said piece or parcel of land in the exercise of said rights, privileges and authority.

Releasor agrees, except with respect to the temporary easement, above, after the expiration thereof, for itself and its successors and assigns, that upon completion of any construction, installation, maintenance, inspection, repair, removal or replacement of its Facilities that significantly disturbs the surface of any portion of any Easement Area, such disturbed surface area shall be restored by such Releasor to its former condition to the extent reasonably practicable, given the presence of the Facilities. Such restoration, however, will not

4

include the replacement or other restoration of such trees, brush, roots, flowers or other growth as may be removed at any time pursuant to the rights herein granted.

Releasor reserves the right, at any time and from time to time, to trim, cut, take down and remove any or all trees, parts of trees, limbs, branches, roots, brush, flowers or other growth on, over or under the Easement Area and/or the said piece or parcel of land that, in the judgement of such Releasor, might interfere with or endanger the construction, installation, maintenance, inspection, repair, removal, replacement or operation of any Facilities or access thereto, but Releasor agrees that it will not remove new plantings installed by Releasee with the consent of the Releasor, which consent will not be unreasonably withheld.

By its acceptance of this deed, Releasee agrees, for itself, its successors and assigns, that each and every part of the Facilities shall be and remain the sole and exclusive personal property of Releasor.

By its acceptance of this deed, Releasee further agrees, for itself, its successors and assigns, that neither Releasee, nor any servant, agent, employee or contractor of Releasee, its successors or assigns, (i) shall have any right of access to the Facilities without the prior written consent of Releasor, and (ii) shall have any access, on foot or in vehicles, to any area that is within fifteen feet (15') of any energized Facilities, and Releasor shall have full and exclusive control of the same.

By its acceptance of this deed, Releasee further agrees, for itself, its successors and assigns, that neither Releasee, nor any servant, agent, employee or contractor of Releasee, its successors or assigns, shall either erect any structure or plant any tree or shrub in a location, or change the grade of or otherwise use the Easement Area in any manner that will interfere with or endanger the operation or maintenance of any of the Facilities or Releasor's right of access to the same.

By its acceptance of this deed, Releasee further agrees, for itself, its successors and assigns, that if any work in connection with any improvement now or hereafter situated on said piece or parcel of land might be liable to cause damage to or otherwise adversely affect any of the Facilities, then no such work shall be commenced by Releasee, nor any servant, agent, employee or contractor of Releasee, its successors and assigns, unless and until Releasor shall have been given prior written notice of the same and given an opportunity to take such measures as it deems necessary to provide protection for the Facilities.

By its acceptance of this deed, Releasee agrees, for itself, its successors and assigns, to be responsible for and to maintain, at its sole cost and expense, the cathodic protection along the bulkheads of said piece or parcel of land.

Except for and not by way of limitation on or rescission of the above-referenced rights, easements and privileges reserved to the Releasor, its successors and assigns, that portion of said piece or parcel of land that is located to the south of a line formed by the northerly face of the structure labeled as "ENGLISH STATION STATION 'A'" on the Map and by continuations or extensions thereof to the easterly and westerly boundaries described above (said portion to the south of said line, as so continued or extended, being the "Restricted Area") shall, for a period of

5

five (5) years from the date of this deed, be used only as and for a fossil fuel generating facility (hereinafter, the "Use Restriction"). The Releasee, by its acceptance of this deed, agrees, for itself, its successors and assigns, that this Use Restriction shall be a covenant running with the land that comprises the Restricted Area and is binding upon the Releasee, its successors and assigns for the benefit of the Releasor, its successors and assigns.

Further Reserving unto the Releasor, its successors and assigns, an irrevocable right of first refusal to repurchase the Premises (hereafter the "Right of First Refusal") upon the following terms and conditions:

Upon Releasee's receipt of a bona fide offer to purchase the Premises from a prospective third person buyer (the "Buyer"), which it intends to accept, Releasee shall (i) give written notice to Releasor of the offer (the "Offer"), which shall set forth at least the following information: details of the terms and conditions of the Offer, including, without limitation, amount and form of consideration, liabilities assumed and retained, intended closing date and intended manner of sale of the Premises; the name and address of the Buyer; reasonable evidence of the source of the consideration; and the financial capacity of the Buyer to complete the purchase of the Premises, and (ii) give Releasor an irrevocable offer to sell the Premises to Releasor upon terms and conditions substantially as set forth in the Offer. Within thirty (30) Business Days of receiving the offer, Releasor may elect to exercise its right of first refusal by notifying Releasee of its election to purchase the Premises, on terms and conditions substantially as set forth in the Offer. Any closing of the purchase of the Premises by Releasor shall remain contingent upon and subject to the receipt of any applicable Governmental Authority approvals necessary to transfer the Premises from Releasee to Releasor and reasonably satisfactory to Releasor. In the event that Releasor fails to accept the Offer within thirty (30) Business Days, Releasor shall provide Releasee with a copy of a recordable statement certifying the waiver of, or refusal to exercise any rights Releasor may have to the Premises. If Releasor shall fail to accept the Offer by Releasee, Releasee shall be free to contract with the Buyer to sell the Premises, provided that such sale is made only in strict accordance with the terms set forth in the Offer. Releasor shall provide Releasee with the original of such a recordable statement, to be recorded on the New Haven Land Records, concurrent with the closing of Releasee's sale of the Premises to the Buyer. In the event that Releasee is thereafter unable to consummate the sale of the Premises to the Buyer pursuant to the terms of the Offer, such recordable statement shall be null and void and of no further force and effect and this Right of First Refusal shall remain in full force and effect.

Releasee shall retain the right to enter into any and all agreements for debt or equity financing for Releasee or Releasee's projects, using the Premises as security, without invoking this Right of First Refusal, provided that any such financing does not involve the sale of a majority equity interest in Releasee or otherwise effectively deliver control of Releasee to a third person.

This Right of First Refusal shall terminate on the third anniversary of the date of this Quit Claim Deed.

6