# EXHIBIT B

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| EVERGREEN POWER, LLC and<br>ASNAT REALTY, LLC | : CIVIL ACTION NO.<br>: 3:12-CV-00032 (SRU)<br>: |
| Plaintiffs,<br>v. | :<br>:<br>: |
| UNITED ILLUMINATING<br>COMPANY | :<br>:<br>: SEPTEMBER 10, 2012 |
| Defendant. | : |

## <u>AFFIDAVIT OF DAVID F. HURLEY</u>

I, DAVID F. HURLEY, being duly sworn, deposes and says as follows:

1.      I am over the age of 18 and I believe in the obligations of an oath.

2.      I am and have been a Connecticut Licensed Environmental Professional (LEP) in good standing since June 1, 1999.

3.      I am a Vice President with Fuss & O'Neill, Inc.

4.      The attached resume is a true and accurate statement of my education, credentials and professional experience.  [**UI005646**].

5.      The information stated herein is based on my personal knowledge and belief.

6.      In developing my opinions, I have relied on information, data and reports listed on Table 1, attached hereto, which information, data and reports relate to certain real property located at 510 Grand Avenue, New Haven, Connecticut (the "Property").  My understanding is that the Property is comprised of two parcels.  Parcel A is owned by Evergreen Power, LLC ("Evergreen Power") and Parcel B is owned by Asnat Realty, Inc. ("Asnat").  I have also reviewed the exhibits which are part of Plaintiffs' Motion for Partial Summary Judgment dated July 30, 2012.

7.     Information that I have reviewed and rely on to assess relevant facts and develop my professional opinion for purposes of this affidavit is in the nature of information ordinarily relied upon by environmental professionals, including LEPs, in the ordinary course.

8.     Based upon the information I have reviewed, which is further detailed below, it appears that Evergreen Power and Asnat and those with whom they have contracted are engaged in demolition and scrapping and salvaging of materials on the Property, and that this activity resulted in: (a) the issuance of a Cease and Desist Order by the Connecticut Department of Energy & Environmental Protection ("CT DEEP") to Asnat, Evergreen Power, Jaqueline Cohen, Grant Mackay Demolition Company, Grant Mackay Company, d/b/a Grant Mackay Demolition Company, and Joseph Vendetti on February 8, 2012  ("CT DEEP Cease and Desist Order"); and (b) the issuance of a September 14, 2011 Administrative Complaint by the United States Environmental Protection (EPA) against Asnat and Evergreen Power, which claims that Evergreen Power and Asnat violated the Toxic Substances Control Act ("TSCA") and regulations at 40 C.F.R. Part 761 in connection with activities associated with Asnat's January 2011 shipment of waste transformer oil containing polychlorinated biphynels ("PCBs") (collectively, "CT DEEP and EPA Enforcement Actions").

9.     My conclusions following my review of the invoices and affidavits of Dina Deutscher, Marc I. Casslar, and John J. Insall, which Plaintiffs submitted in support of their Motion for Partial Summary Judgment dated July 30, 2012, include the following:

a.     Of $300,572.92, which appears to be the total amount of the invoices submitted, at least $168,238.84 appear to be associated with the recycling, assessment and removal of equipment and building materials, and the demolition activities at the Property.  It can not be discerned from the information on the invoices whether

the activity that is described took place on Parcel A, Parcel B or both parcels.  Of note, with the exception of five (5) invoices, the subject invoices appear to have been billed to Community Retail, an entity whose relationship to the Property and Evergreen Power and Asnat is not known; the five exception invoices appears to have been billed to Asnat.   See Pls. Exh. 8, GeoQuest invoices 4354, 4363, 4408, 4440, 4471, 4527, 4602, 4588, 4662, 4715, 4734, and 4747.

b.       Of $300,572.92, which appears to be the total amount of the invoices submitted, at least $31,582.00 appear to be primarily associated with the assessment and management of asbestos-containing building materials in buildings located on the Property.  Again, it can not be discerned from the information on the invoices whether the activity that is described took place on Parcel A, Parcel B or both parcels.  Of note, with the exception of one (1) invoice, these invoices appear to have been billed to Community Retail; the one exception invoice, which is stated as being for building asbestos assessment work, appears to have been billed to Asnat.  See Pls. Exh. 4, GeoQuest invoices 2567, 2994, 3015, 3151, 4030, 4311, and 4503.

c.       Of $300,572.92, which appears to be the total amount of the invoices submitted, at least $94,995.78 appear to be associated with actions in response to the "CT DEEP and EPA Enforcement Actions".  I have reviewed the CT DEEP and EPA Enforcement Actions.  The referenced waste transformer oil is regulated under TSCA and appears to have been removed by or at the request of Asnat and/or Evergreen Power from equipment in or in the vicinity of the buildings on the Property in connection with Asnat and/or Evergreen Power's planned recycling,

-3-

scrapping, salvage and/or demolition activity at the Property.   See, Pls.' Exh. 8, GeoQuest invoices 4391, 4789, and 4815.

d.      Of $300,572.92, which appears to be the total amount of the invoices submitted, at least $810.00 is identified as being for "professional services" or "C-RAP for English Station" with insufficient information to discern the nature or type of service that was rendered. (See Pls. Exh. 3, Stantec invoice 602673 and 602674).

e.      Of $300,572.92, which appears to be the total amount of the invoices submitted, at least $2,800.80 appear to be associated with power generating permitting assistance to Community Retail.  See, Pls. Exh. 4, GeoQuest invoice 2167.

f.      Of $300,572.92, which appears to be the total amount of the invoices submitted, at least $2,145.50 is identified in two invoices issued in 2009 as being for "NCP review and consulting" and "National Contingency Plan documents", respectively.  There is, however, no further indication as to the nature of these services and no basis is provided on which to conclude that these services were both necessary and consistent with the National Contingency Plan ("NCP"). I am familiar with the National Contingency Plan, which appears at 40 C.F.R. Part 300. See, Pls. Exh. 5 , GeoQuest invoices 3671 and 3793.

10.     I have also reviewed GeoQuest's March 9, 2012 Revised Short-Term Work Plan, wherein GeoQuest states that activities described in their Short-Term Work Plan were in support of recycling materials in or around the Main Building and ancillary buildings and structures, and to support salvage and recycling activities at and affecting the Property by and/or at the direction of the Plaintiffs and/or their contractors or affiliates. *GeoQuest2012 Revised Short-Term Work Plan,* 1, 2, 18, Exh. 2 [**UI005302-5303, UI005319**].   This Revised Short-Term Work Plan, like

an earlier plan submitted by GeoQuest to CT DEEP on behalf of Plaintiffs on February 21, 2012 and disapproved by CT DEEP on March 1, 2012 ("CT DEEP 2012 Disapproval Letter"), Exh. 26 [**UI005924-5928**], appears to have been prepared and filed with CT DEEP in response to CT DEEP's February 8, 2012 Cease and Desist Order, which directed Asnat and Evergreen Power (as well as the other recipients of that Order) to submit and implement "a plan which details the actions to be taken to investigate, and as needed decontaminate, the PCBs and other hazardous contaminants in and around the buildings to make the buildings safe for demolition". This plan was to be approved in writing by CT DEEP.

11.     Upon information and belief, GeoQuest, with the assistance of Loureiro Engineering Associates, also prepared a February 7, 2012 PCB Self Implementing Plan for Asnat and Evergreen ("2012 PCB Self Implementing Plan"), "presenting a strategy for remediation of building materials contaminated with PCBs in the former electrical power plant on the ASNAT Site." CT DEEP 2012 Cease and Desist Order ¶45, Exh. 3 [**UI005177**].

12.     I am not aware of any documentation that either the 2012 Revised Short-Term Work Plan or the 2012 PCB Self Implementing Plan, which appear to have been prepared for purposes of assuring proper implementation of Asnat and/or Evergreen's planned recycling, scrapping, salvage and/or demolition activities at the Property in 2011 and 2012, have been approved by either CT DEEP or EPA. I am also not aware of any documentation of either public involvement with the 2012 PCB Self Implementing Plan or the CT DEEP and EPA Enforcement Actions or the ultimate disposition of the CT DEEP and EPA Enforcement Actions.

13.     Based upon my review of the CT DEEP and EPA Enforcement Actions, I conclude the following:

a.   The invoices provided by Evergreen Power and Asnat (not all of which were issued to either Evergreen Power or Asnat and none of which were issued to Evergreen Power) do not adequately support their assertion that the costs recited in these invoices were both necessary and incurred consistent with the NCP.

b.   Both the timing and the content of these invoices, with the possible exception of the invoice dated  June 2, 2006, which is prior to the acquisition of the Property by Evergreen Power and Asnat and is identified as relating to power generating permit assistance, support a conclusion that the referenced costs were incurred by Plaintiffs in connection with the performance of the recycling, scrapping, salvage and demolition activities referenced above and/or the response by Asnat and/or Evergreen Power to the CT DEEP and EPA Enforcement Actions pertaining to acts or omissions of Asnat and Evergreen Power and/or others with whom they had contracted to perform such activities.

c.   The information presented does not demonstrate that the costs Evergreen Power and Asnat claim they have incurred are related to releases in areas which occurred prior to 2000 or during The United Illuminating Company's ("UI") ownership and operation of the Property.

14.   Based on my review of the available information, data and reports, remedial action at the Property consistent with and in furtherance of previously prepared remedial action plans and a final remedy for all or portions of the Property had commenced as early as 1998.

a.   Remedial action commenced in 1998 in the area of the bulkhead located on the Property. *UI Subsurface Investigation and Remediation Plan Report for English Station*, August 1998, Exh. 1 [**UI00859**].

b.  Remedial actions recommended in GEI's 2000 Draft Remedial Action Plan ("RAP")

to meet industrial/commercial standards in Connecticut's Remediation Standards

Regulations (the "RSRs") (*GEI 2000 Draft RAP* 1, Exh. 4 [**UI000947**]) that have

been implemented at the Property include the following:

i.  *Recommended Action:* GEI indicated that PCBs >1 ppm and ≤ 10 ppm would be

covered with a cap, and that soils with PCBs > 10 ppm would be excavated and

disposed of off-site.  GEI 2000 *Draft RAP* 19, Exh. [UI000965].

> *Completed Action:* In 2003, PCB-impacted soil and concrete were being
>
> cleaned up on the Property in accordance with the 2002 sitewide plan by
>
> excavation and removal of soils, scarification and/or capping.  *AEI 2003*
>
> *Request for Widespread Polluted Fill Variance* 11, Exh. 5 [**UI002117**].
>
> *Completed Action:* An overhead crane inside Station B on the Property
>
> was decontaminated. Based on the dates of characterization and
>
> verification sampling, the crane was decontaminated in 2002.  The Annex
>
> III floor located in Station B was remediated to 1 ppm. The remediation
>
> consisted of two scarifications followed by the removal and disposal of
>
> concrete that did not meet the 1 ppm goal after the second scarification.
>
> Based on the dates of the "verification sampling," which is a term used
>
> when referring to methods for confirmation of the adequacy of a final
>
> remedial action, the remediation of the floor was conducted in 2002 with
>
> additional characterization samples being collected in 2001 and 2004.  As
>
> of March 2005, Advanced Environmental Interface ("AEI") believed that
>
> Parcel A's Station B building interior had been remediated to less than 1

ppm on pervious surfaces and less than 10 ppm on stained impervious

surfaces *AEI 2005 Interim PCB Report for Station B Parcel Sale* 3-4, 18-

22, Exh. 6 [**UI002750-54, UI002767-2771**].

*Completed Action:* Scarification of additional portions of the Station B

floor was conducted in 2008 to address PCBs that had been detected at

concentrations greater than 1 ppm since 2005.  Several areas with PCBs >

1 ppm remained after scarification.  Soil and asphalt containing PCBs was

remediated by excavation in November and December 2007.  Two areas in

the central coal yard on Parcel A were remediated to concentrations less

than or equal to 1 ppm.  One area in the southwest coal yard was

remediated to PCB concentrations less than or equal to 10 ppm. AEI 2007

*Parcel A PCB Cleanup Plan* 4, Exh. 7 [**UI003889**]; AEI 2008 *Interim*

*Parcel A PCB Cleanup Status Report*, Exh. 8 [UI005154-5153].  A portion

of the southwest coal yard remediation area was located on "Parcel B."

GeoQuest 2012 *Revised Short-Term Work Plan* Figure 1-2, Exh. 2

[**UI005329**].  It is noted that the boundary between Parcel A (Station B)

and Parcel B (the Plant Parcel) is different on various maps. AEI 2006

*Station B Parcel PCB Cleanup Plan* 12, Exh. 9 [**UI003222**]; AEI 2008

*Interim Parcel A PCB Cleanup Status Report* 4, Exh. 8 [UI005155];

GeoQuest 2012 *Revised Short-Term Work Plan* Figure 1-2, Exh. 2

[**UI005329**].

ii.    *Recommended Action:* GEI proposed as a final remedy for two areas the

excavation of soil where SVOCs exceeded the GB pollutant mobility criteria

("PMC") (area of concern ("AOC") 7 and AOC 13) and the capping of soil in the coal yard that exceeded the I/C DEC for arsenic. *GEI 2000 Draft RAP* 20, Exh. 4 [**UI000966**].

>   *Completed Action:* In 2003, AEI prepared a request for a variance from the PMC for wide-spread polluted fill at the Property. The request attributed much of the heavy hydrocarbon compounds (including polyaromatic hydrocarbons ("PAHs"), which are a subset of SVOCs) to historic dredge spoils used to create the island and not uses or operations on the Property.  Coal and coke fragments as well as coal ash were also identified in the fill by AEI.  A variance is a remediation measure to achieve final compliance with the PMC as provided in Section 22a-133k-2(f) of the Connecticut RSRs.  CT DEEP approved this variance request in March 2003.  Also by 2003, a concrete floor had been placed over the former earthen basement of Station B to render inaccessible soil containing lead, arsenic, and PAHs above the industrial/commercial ("I/C") DEC associated with historic fill.  *AEI 2001 RAP for Former Coal Yard Area* 10, Exh. 10 [**UI001201**]; *AEI 2003 Request for Wide-Spread Polluted Fill Variance* 14, 21, Exh. 5 [**UI002120, UI002127**]; *AEI 2005 Interim PCB Report for Station B Parcel Sale* 4, Exh. 6 [**UI002751**]; *AEI 2005 Engineered Control Variance Request* 2-3, Exh. 11 [**UI000964-0966**].

    iii.   *Recommended Action:* GEI proposed remediating PCB-impacted soil at capacitor bank 1 located on Parcel B and disposing of or encapsulating concrete. *GEI 2000 Draft RAP* 18-20, Exh. 4 [**UI000964-0966**].

        *Completed Action:* AEI presented pre- and post-excavation soil sample data and post-cleanup confirmation soil sample data from the capacitor bank 1 location dated 2002. *AEI 2002 Site-Wide PCB Characterization and Cleanup Plan* 23-24, 41, Exh. 12 [**UI001251-1252, UI001270**]. Therefore, there is a strong likelihood that the final remedial action was completed in this area prior to 2002.

c.  Remedial actions recommended in AEI's 2001 Remedial Action Plan for the Former Coal Yard Area and implemented in anticipation of repowering-related construction on the Property (*AEI 2001 RAP for Former Coal Yard Area* 6, Exh. 10 [**UI001970**]) include the following:

    i.   *Recommended Action:* AEI recommended pursuit of a widespread polluted fill variance to achieve compliance with the PMC. *AEI 2001 RAP for Former Coal Yard Area* 15, Exh. 10 [**UI001206**].

        *Completed Action:* In 2003, AEI prepared a request for a variance to satisfy PMC requirements for wide-spread polluted fill on the Property. The variance was approved by CT DEEP in March 2003. *AEI 2003 Request for Widespread Polluted Fill Variance, Exh. 5; AEI 2005 Engineered Control Variance Request* 2-3, Exh. 11 [**UI003168**].

d.  Remedial actions recommended in *AEI's 2002 Site-Wide PCB Characterization and Cleanup Plan*, Exh. 12:

-10-

i.   *Recommended Action:* AEI's 2002 cleanup plan proposed cleanup options depending on the anticipated use of the Property. Where industrial or commercial use was anticipated, excavation to 10 ppm and capping was recommended. *AEI 2002 Site-Wide PCB Characterization and Cleanup Plan* 54, Exh. 12 [**UI001283**].

> *Completed Action:* In November/December 2007, two areas in the central coal yard on Parcel A were remediated to concentrations less than or equal to 1 ppm, and one area in the southwest coal yard was remediated to PCB concentrations less than or equal to 10 ppm with an intention to install a cap. AEI 2008 *Interim Parcel A PCB Cleanup Status Report*, Exh. 8 [**UI005153-5154, UI005165-5171**].

ii.   *Recommended Action:* In 2007, the EPA approved AEI's April 2007 Parcel A PCB Cleanup Plan. Planned actions included scarification of the Station B floor, removal of sediment from a section of a tunnel, the removal of PCB-impacted asphalt and soil in "Area 2.2" to 1 ppm, and the removal of PCB-impacted soil at "Area 3.2" to achieve 10 ppm. AEI 2007 *Parcel A PCB Cleanup Plan* 10, 14, 15, Exh. 7 [**UI003895, UI003899, UI003900**]; EPA 2007 *PCB Disposal Approval*, Exh. 13. The plan noted that some PCB contamination had already been cleaned up, including scarification of Annex III, removal of PCB-impacted concrete, and capping of the earthen basement. AEI 2007 *Parcel A PCB Cleanup Plan* 10-11, Exh. 7 [**UI003895-3896**].

> *Completed Action:* Remediation of porous and non-porous surfaces inside Station B and the excavation of PCB-impacted soil in the coal yard (and

extending onto the northern portion of the Plant parcel) were completed in 2007 and 2008 in accordance with the EPA approved AEI April 2007 Parcel A PCB Cleanup Plan.  AEI 2008 *Interim Parcel A PCB Cleanup Status Report*, Exh. 8 [**UI005152-5154, UI005156-5157, UI005165, UI005169**].

15.     Information, data and reports reviewed support the conclusion that actions taken at the Property by Evergreen Power, Asnat and/or persons or entities other than UI, including documented actions since UI's transfer of the Property in 2000, may have caused claimed PCB contamination on the Property. Examples of such actions include the following:

a.  The river was dredged by the U.S. Army Corps of Engineers to support shipping and changes in the U.S. Harbor Lines between 1872 and 1947.  It is believed that the dredge spoils were disposed of by extending the island and that those dredge spoils were expected to contain coal tar products and contamination from surrounding industrial operations. *AEI 2003 Request for Widespread Polluted Fill Variance* at 1-8, Exh. 5 [**UI002107-2113**].  Given some of the industrial uses identified below, which had the potential to include the use of PCBs in electrical equipment, the dredge spoils could have contained PCBs.

b.  Known historical land uses along the river in the immediate vicinity of the Property included: a power plant for New Haven's electric trolley system, coal yards, a brass works, a wood preservative manufacturer, steel mills, an oil storage facility, steam engine and boiler manufacturing, wire works, chemical manufacturing, coal gas manufacturing, and an iron and scrap metal company.  In addition, the river was used

for shipping and industrial waste discharges. *AEI 2003 Request for Widespread Polluted Fill Variance* 9, Exh. 5 [**UI002115**].

c. In 1947, the United Scrap Iron & Metal Company began operating on the island north of Grand Avenue. In 1988, the CT DEEP (then known as the Connecticut Department of Environment Protection) issued an order against this company for maintaining PCB soil contamination at that property. *AEI 2003 Request for Widespread Polluted Fill Variance* 15, Exh. 5 [**UI002121**].

d. AEI confirms that, prior to the transfer of the Property by UI to Quinnipiac Energy, LLC ("QE") in 2000, UI had removed all PCB and PCB-contaminated electrical equipment that was non-functional and that was not required for QE's planned restart of the power generating units in deactivated reserve at the Property. Equipment remaining at the Property, including equipment containing PCBs, was operational and necessary and, therefore, QE did not plan to remove it. AEI 2002 *Site-Wide PCB Characterization and Cleanup Plan* 9, 10, Exh. 12 [**UI001236-1237**].

e. Determinations as to storage and disposal of PCB or PCB-contaminated electrical equipment were made by UI under their standard operating procedures during UI's ownership of the Property, and any such equipment stored in the Annex III location was removed prior to the transfer of the Property to QE in 2000. AEI 2002 *Site-wide PCB Characterization and Cleanup Plan* 9, 10, Exh. 12 [**UI001236-1237**].

f. QE performed engineering and maintenance work at the Property in preparing to operate two units for peaking power and to ultimately repower the existing units at the Property. Pls.' Exh. 6, *AEI 2012 PCB Sources* 1, [**P000051**].

g.  AEI oversaw the removal of a small volume of lubricating oil from the motor sumps in the overhead crane during QE's ownership of the Property. *AEI 2007 Parcel A PCB Cleanup Plan* 9, Exh. 7 [**UI003894**].

h.  Evergreen Power and/or Asnat were engaged in recycling, scrapping, salvage and demolition-related activities at the Property during which approximately 640 tons of metal were removed from the Property by Grant Mackay Demolition Company between December 16, 2011 and February 9, 2012. *GeoQuest 2012 Revised Short-Term Work Plan* Attachment 1, Materials Management Log, Exh. 2 [**UI005354**]. In addition, GeoQuest, TetraTech, Loureiro Engineering Associates, and Classic Environmental were performing work on the Property in support of the salvage/scrapping/recycling of equipment at the Property, including PCB-containing equipment. *GeoQuest 2012 Revised Short-Term Work Plan* 8, 10-11, 18, Exh. 2 [**UI005309, UI005311-5312, UI005319**].

i.  PCB oil was removed from five (5) PCB transformers and 3 non-PCB transformers on the Property in January 2011. *CT DEEP 2012 Cease and Desist Order* ¶A25, Exh. 3 [**UI005175**]. EPA states that Asnat and Evergreen Power began PCB waste handling activities at the Property "at least sometime in or after December 2006." *EPA 2011 Complaint* ¶35, 37, 38, Exh. 14 [**UI005191**].

j.  The manner in which Asnat and Evergreen Power and/or their contractors handled PCBs on the Property and generated PCB waste transformer oil led to the issuance of the CT DEEP and EPA Enforcement Actions. EPA 2011 *Complaint*, Exh. 14; CT DEEP 2012 *Cease and Desist Order*, Exh. 3.

-14-

k.  In the 2012 Cease and Desist Order, CT DEEP observes that warning signs required at the Property because of conditions identified in a significant environmental hazard report filed in March 1, 2005 had been removed and equipment had been placed on soil that was contaminated by PCBs. CT DEEP 2012 *Cease and Desist Order* ¶¶17, 34, Exh. 3 [**UI005174-5175**].

l.  In the 2012 Cease and Desist Order, CT DEEP alleges that demolition and scrapping activities conducted and being conducted at the Property by Asnat, Evergreen and other entities other than UI without properly managing PCBs and other contaminants are likely to result in imminent and substantial damage to the environment or public health.  CT *DEEP 2012 Cease and Desist Order* ¶A46, Exh. 3 [**UI005177**].

m.  Regan Metals operated on the Property in 2005.  AEI 2005 *Actions Taken in Response to Significant Environmental Hazard Letter* 1, Exh. 15 [**UI003162**].  While the specific nature of Regan Metals' operations is not known, Regan Metals Corporation, located in New Haven, Connecticut, is known as a scrap metal recycling company.

n.  A review of available aerial photographs, which are in the nature of information generally accessed and  reviewed by LEPs when performing an assessment of the history of a site and for purposes of identifying areas of potential environmental concern, indicates the following activities have occurred at the Property since UI's transfer of the Property to QE in 2000, which activities could have resulted in releases or threatened releases of hazardous substances:

i.  At least two capacitor banks (1 and 2) appear in the April 2001 aerial photographs (Eastern Topographics, N0239-0928 CAM, April 15, 2001, Exh. 16 [**UI005640**]),

-15-

but do not appear in subsequent aerial photographs beginning in 2004.  See, e.g., 2004 CT DEEP, Exh. 17 [**UI005641**].

ii.  There is no storage shown in aerial photographs of Parcel A from 2000 and 2001, while an aerial photograph of Parcel A from 2004, that is, years after the 2000 transfer of the Property to QE, shows significant storage of containers and soil on Parcel A.  Connecticut State Archives, 2000, Exh. 18 [**UI005639**]; Eastern Topographics (N0239-0928 CAM, April 15, 2001), Exh.  16 [**UI005640**]); 2004 CT DEEP, Exh. 17 [**UI005641**].  Much of the stored material was removed as of the date of the 2006 aerial photograph, but some debris and a truck trailer are visible through the date of 2012 aerial photograph.  Pictometry 2006, Exh. 19 [**UI005642**]; Google Earth, March 29, 2012, Exh. 20 [**UI005645**].

iii.  The concrete pads for three former northern capacitors (1, 2, and 3)  appear in the 2004 aerial photograph, but they were demolished by the time of the 2012 aerial photograph.  2004 CT DEEP, Exh. 17 [**UI005641**]; Google Earth, March 29, 2012, Exh. 20 [**UI005645**].  One of these pads is present in the 2010 aerial photograph, but demolished by the time of the 2012 aerial photograph.  Google Earth, September 10, 2010, Exh. 21 [**UI005644**]; Google Earth, March 29, 2012, Exh. 20 [**UI006545**].

iv.  Per the 2010 and 2012 aerial photographs, two transformers, an above ground storage tank, and some ironwork on the southwestern portion of the Property were removed between 2010 and 2012.  Google Earth, September 10, 2010, Exh. 21 [**UI005644**]; Google Earth, March 29, 2012, Exh. 20 [**UI005645**].  Some of this

activity was in areas where significant environmental hazards were previously identified.

16.     AEI identified PCBs in paint on an overhead crane in Station B.  The PCBs were suspected to be part of the paint formulation and not a result of PCB oil use on the Property. AEI 2007 Parcel A PCB Cleanup Plan 12 Exh. 7 [**UI003897**]; Pls. Exh. 6, AEI 2012 Report on PCB Sources, Pls. Exh. 6 [**P000052**].  The presence of such materials does not constitute a release unless and until the handling (e.g., demolition, salvage and scrapping activities) occasions a release of the paint containing PCBs.

17.     In January 2011, Asnat shipped 4,300 gallons of PCB-contaminated waste oil generated in connection with recycling, scrapping, salvage and/or demolition activities to a facility that was not authorized to receive and manage such waste.  If any of the waste oil were returned to the Property pending proper arrangements for disposal, PCB oil would have been brought onto the Property and any location of on-site storage of the waste oil, even if temporary, would be a  potential release area.

18.     In summary, my opinions regarding the Property include the following:

a.     Information provided by and cited to by Evergreen Power and Asnat does demonstrate or support the conclusion that costs Evergreen Power and Asnat claim to have incurred were both necessary and consistent with the NCP. Further, such information does not demonstrate or support the conclusion that the costs Evergreen Power and Asnat claim to have incurred were response costs relating to releases of hazardous substances at the Property during UI's ownership of or operation at the Property.

-17-

b.  A review of the information, data and reports, including the CT DEEP and EPA Enforcement Actions, supports a conclusion that, with the exception of costs identified in a June 2, 2006 invoice from GeoQuest for permitting assistance (which is not a response cost), the costs Evergreen Power and Asnat claim to have incurred are costs associated with the recycling, scrapping, salvage and/or demolition activities of Evergreen Power and Asnat at the Property or in response to the CT DEEP and EPA Enforcement Actions resulting from acts or omissions of Evergreen Power and Asnat.

c.  CT DEEP disapproved the February 2012 Short Term Work Plan submitted by Evergreen Power and Asnat and there is no demonstration that either CT DEEP or EPA has approved either the Revised Short Term Work Plan or the 2012 PCB Self Implementing Plan.  Unless the plans have been approved, any actions taken or to be taken by Evergreen Power and Asnat to manage and address PCBs at the Property may not comply with applicable state and/or federal requirements and standards.

d.  Based on the information reviewed, remedial action commenced at the Property in 1998.

e.  There are activities that have occurred at the Property since UI's transfer of the Property to QE in 2000, including activities by Evergreen Power and Asnat and entities with whom they have contracted that have likely resulted in the release and threatened release of PCBs at the Property.

f. Based upon my review of the information, data and reports, it cannot be concluded that additional PCBs were not brought onto either Parcel A or Parcel B subsequent to the transfer of the Property by UI to QE in 2000.

g. Based upon my review of the information, data and reports, I did not identify any record of PCB containing equipment on the Property as of the date of the transfer of the Property by UI to QE in 2000 that was in a condition that did not comply with, and was not being used and maintained by UI in compliance with, federal and state statutes and regulations pertaining to such equipment. Equipment that was left place as of the date of the transfer of the Property by UI to QE was equipment that QE retained for intended future use.

_[signature]_

Subscribed and sworn before me this 10th day of September, 2012,

_[signature]_

Notary Public   Tracy Gargano

My Commission Expires: 2/28/2012

TRACY O. GARGANO
*NOTARY PUBLIC*
MY COMMISSION EXPIRES FEB. 28, 2013

-19-


**FUSS & O'NEILL**

committed to sustainable solutions



**Education**
BS, Geology - 1979
State University of New York at
Albany

**Licenses & Registrations**
Professional Geologist KY
Licensed Environmental
Professional CT

**Professional Affiliations**
National Brownfields Assoc.
EPOC

**25 years with Fuss & O'Neill**
**32 years Professional**
**Experience**

# David F. Hurley, LEP, PG
# Vice President

Mr. Hurley serves as a Project Director and Director of Brownfields
Services. He has over 20 years of diversified environmental project
experience, with emphasis on contaminant hydrogeology, investigative
techniques and remediation. Mr. Hurley has managed a wide range of
multidisciplinary projects including property transfer site assessments,
hazardous waste investigations, compliance assessments, solid waste
engineering and permitting, underground storage tanks, and remediation
design and construction administration.  In addition to technical expertise,
he has experience with Brownfields incentives and funding programs.

Mr. Hurley has extensive experience with brownfield redevelopment
assisting both private developers and government agencies to bring
environmentally impaired properties back to productive re-use. In addition
to technical expertise, he has experience with Brownfields incentives and
funding programs. Mr. Hurley serves as a member of the Connecticut
General Assembly's Brownfields Working Group.

Mr. Hurley directs a variety of environmental projects and is a regional
expert in the area of Brownfields Redevelopment.  Representative projects
include:

**City of Hartford, CT:**  Project Director for a range of services in support
of Hartford's Brownfields and Redevelopment Programs as well as on-
going infrastructure programs. Phase I, II, and III Site Assessments,
demolition and remediation, design and administration have been
performed in support of property transactions for redevelopment. Other
services provided include remediation oversight, tank system design, and
asbestos and lead surveys, demolition design and management flood
control system improvement design, pond restorations.

**Former Gilbert & Bennett Facility, Redding, CT:**  Project Director for
comprehensive environmental services for the redevelopment of a 50 acre
Brownfields site located along the Norwalk River in Georgetown,
Connecticut. The Gilbert and Bennett Company had manufactured metal
wire products from 1848 to 1989. This RCRA corrective action site is also
subject to the Connecticut Property Transfer Act. Fuss & O'Neill has
conducted a fast-tracked site investigation. The remediation will involve the
development of a Town Center over most of the contamination and the
closure of a RCRA landfill. Fuss & O'Neill teamed with Duany, Plater-
Zyberk & Company, in a seven day design charrette that involved all
stakeholders to design the Town Center.  A remedial Action Plan was
prepared and approved.  The first Corrective Action Management Unit
(CAMU) authorization in EPA Region 1 was granted.  Fuss & O'Neill is on
the design team of several intersection reconstruction projects, two of
which are now under construction.

 FUSS & O'NEILL                    committed to sustainable solutions

**Steel Point Development, Bridgeport, CT:** Principal in Charge for environmental and engineering services to a partnership of the Connecticut Brownfields Redevelopment Agency, Connecticut Departments of Economic and Community Development and Department of Environmental Protection and the City of Bridgeport. Fuss & O'Neill performed a comprehensive study of the 50 acre waterfront site to evaluate regulatory, physical and infrastructure constraints on redevelopment. Environmental conditions and remedial alternatives, geotechnical, waterfront conditions, transportation, stormwater, site grading, flood zones, utilities and all permitting requirements were evaluated. Fuss & O'Neill is more recently providing these services to the developer of the site, Bridgeport Landing Development, LLC.

**CRCOG, Metropolitan Hartford, Hartford, CT:** Project Director for environmental assessment and engineering services for a regional Brownfields program involving 39 cities and towns. The program is managed by the Capital Region Council of Governments in conjunction with the Metro Hartford Alliance. Additional services including working with member communities to develop remediation and funding strategies for site redevelopment.

**REX Development, CT:** Fuss & O'Neill provides strategic consulting and technical assistance for the Brownfields Revolving Loan Fund and site assessment to the New Haven Regional Economic development agency. Services include providing oversight and review of proposals for eligibility and remediation efforts by loan recipients and grantees, to determine compliance with the MOU with EPA and agreements with recipients.

**Former National Welding Facility, Newington, CT:** Project Director for environmental services to implement a Brownfields Assessment Grant. Most of the grant funds were used to conduct Phase I, II and III investigations and an asbestos survey of the former National Welding site. A Quality Assurance Project Plan was prepared using Fuss & O'Neill's previously approved generic QAPP and submitting the site specific QAPP that detailed the sampling program and rational. Presentations were made to the Town Council. A Remedial Action Plan is being prepared at this time regarding the findings and development constraints.

**Town of Windsor, CT:** Project Director for environmental and solid waste engineering services for this 55-acre RCRA regulated landfill. These services have included groundwater monitoring, hazardous waste services, permitting, air monitoring, landfill design and groundwater modeling and leachate treatment design. The leachate treatment system will involve passive groundwater collection and constructed wetlands treatment. Fuss & O'Neill has assisted with numerous community outreach efforts including technical support for the Post Closure Land Use Steering Committee and Town Council meetings and forums regarding landfill management decisions.

DHurley@fando.com                          David F. Hurley, LEP, PG, Vice President
                                                                800.286.2469
                          www.fando.com

UI005647

**Fuss & O'Neill Table of Documents and Sources**

**English Station**

| Date | Title | Source |
|---|---|---|
| 5/27/1998 | Phase I ESA | GEI |
| 7/6/1998 | Lab Reports (1998-05 to 1998-07) | CTL |
| 7/27/1998 | Phase II-III Field Investigation | GEI |
| 8/10/1998 | Investigation and Remediation Report | The United Illuminating Company |
| 5/26/1999 | Preliminary Report of Supplemental Investigation | EnviroShield, Inc. |
| 2/10/2000 | Supplemental Investigation | EnviroShield, Inc. |
| 5/1/2000 | Draft RAP | GEI |
| 5/1/2000 | Suplemental Field Investigation | GEI |
| 9/15/2000 | ECAF | Quinnipiac Energy |
| 4/13/2001 | RAP for Former Coal Yard | AEI |
| 7/12/2002 | SiteWide PCB Characterization & Cleanup Plan (Vol 1) | AEI |
| 7/12/2002 | Sitewide PCB Characterization & Cleanup Plan (Vol 2) | AEI |
| 1/10/2003 | Request for Widespread Polluted Fill Variance | AEI |
| 3/31/2005 | Interim Parcel B PCB Report | AEI |
| 4/22/2005 | Letter Re: Actions Taken Pertaining to Significant Environmental Hazard | AEI |
| 12/13/2005 | ECVR for Station B | AEI |
| 3/28/2006 | Station B PCB Cleanup Plan | AEI |
| 4/2007 | Parcel A PCB Cleanup Plan (Vol 1) | AEI |
| 4/2007 | Parcel A PCB Cleanup Plan (Vol 2) | AEI |
| 5/7/2007 | Approval of Parcel A PCB Plan | USEPA |
| 5/19/2008 | Interim Parcel A PCB Cleanup Status Report | AEI |
| 9/14/2011 | Complaint Against ASNAT & Evergreen Power | USEPA |
| 2/2012 | PCB Self-Implementing Plan | GeoQuest & LEA |
| 2/8/2012 | Cease and Desist Order | DEEP |
| 2/18/2012 | Amended Complaint | Evergreen & Asnat |
| 3/1/2012 | Disapproval Letter for Short Term Work Plan | DEEP |
| 3/9/2012 | Revised Short Term Work Plan | GeoQuest & LEA |
| 5/11/2012 | PCB Sources Report | AEI |
| 7/30/2012 | Motion for Summary Judgment as to Liability | Evergreen Power, LLC and Asnat Realty, LLC. |
| 7/30/2012 | Exhibit 1 - Affidavit of Mehboob Shah - 7/23/2012 | Attached to Motion for Summary Judgment |
| 7/30/2012 | Exhibit 2 - Answer to Second Amended Complaint - 5/9/2012 | Attached to Motion for Summary Judgment |
| 7/30/2012 | Exhibit 3 - Affidavit of John Insall - 7/16/2012 | Attached to Motion for Summary Judgment |
| 7/30/2012 | Exhibit 4 - Affidavit of Diana Deutscher - 7/16/2012 | Attached to Motion for Summary Judgment |
| 7/30/2012 | Exhibit 5 - Quit Claim Deed - 8/16/2000 | Attached to Motion for Summary Judgment |
| 7/30/2012 | Exhibit 6 - AEI Report on PCB Sources - 5/11/2012 | Attached to Motion for Summary Judgment |
| 7/30/2012 | Exhibit 7 - Timothy Wasielewski - 7/9/2012 | Attached to Motion for Summary Judgment |
| 7/30/2012 | Exhibit 8 - Marc Casslar - 7/19/2012 | Attached to Motion for Summary Judgment |
| 7/30/2012 | Exhibit 9 - GEI  Phase I ESA - 5/27/1998 | Attached to Motion for Summary Judgment |

Notes:
AEI = Advanced Environmental Interface, Inc.
CT DEEP = Connecticut Department of Energy and Environmental Protection
CTL = Connecticut Testing Laboratories
GEI = GEI Consultants, Inc.

GeoQuest = GeoQuest, Inc.
LEA = Loureiro Engineering Associates, Inc.
USEPA = United States Environmental Protection Agency